IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CITY OF ANNAPOLIS, MARYLAND,<br>    *Plaintiff,*<br><br>    v.<br><br>BP P.L.C., et al.,<br>    *Defendants.* | Civil Action No. ELH-21-772 |

**MEMORANDUM**

On February 22, 2021, the City of Annapolis ("Annapolis" or the "City") filed suit in the Circuit Court for Anne Arundel County against twenty-six multinational fossil fuel companies and a trade association. ECF 17 (the "Complaint"). The City alleges that defendants have "promoted and profited from . . . the extraction, production, and consumption of oil, coal, and natural gas," and that their conduct has "substantially contributed to a wide range of dire climate-related effects . . . ." *Id.* ¶ 2. According to the City, defendants engaged in such activities while concealing the known environmental consequences. *Id.* ¶ 1. As a result of such conduct, the City claims that it has experienced, and will continue to suffer, "devastating adverse impacts," including continued sea-level rise. *Id.* ¶ 10. Seeking damages, Annapolis asserts six claims founded on Maryland law. *Id.* ¶¶ 150-65.

Defendants removed the suit to this Court. ECF 1. They advance five grounds for subject matter jurisdiction. *Id.* at 16.[1]

---

[1] The City has filed a motion to remand (ECF 118), supported by a memorandum of law. ECF 120 (collectively, the "Remand Motion"). But, it is not yet ripe for resolution.

Now pending is defendants' motion for a stay of proceedings (ECF 80), supported by a memorandum of law. ECF 80-1 (collectively, the Motion). Defendants argue that a stay is warranted pending the issuance of decisions by the Supreme Court and the Fourth Circuit in a closely related case that originated in this Court. *See Mayor and City Council of Baltimore v. BP P.L.C., et al.*, ELH-18-2357 ("*Baltimore Case*" or "*Baltimore I*"). Plaintiff opposes the Motion. ECF 117. Defendants replied. ECF 119.

After briefing on the Motion was completed, the Supreme Court issued a decision in the *Baltimore Case*, as discussed, *infra*. *See BP P.L.C. v. Mayor & City Council of Baltimore*, ___ U.S. ___, No. 19-1189, 2021 WL 1951777 (U.S. May 17, 2021) ("*Baltimore III*").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Background

The main features of the *Baltimore Case*, at its inception, are strikingly similar to those of this case. In 2018, the City of Baltimore brought a climate change suit in State court against twenty-six corporate defendants active in fossil fuel industries, asserting only State law claims. *See Baltimore Case*, ECF 42. The defendants in the *Baltimore Case* removed the suit, invoking multiple grounds for removal. *See id.*, ECF 1. Several of the defendants in this case are also defendants in the *Baltimore Case*. And, several of the grounds for removal asserted by defendants here are the same as those asserted in the *Baltimore Case*. In addition, counsel for Annapolis also represents the City of Baltimore.

One of the jurisdictional claims advanced in both suits is that removal was proper pursuant to the so-called federal officer removal statute, found in 28 U.S.C. § 1442(a)(1). ECF 1 at 7; *see Baltimore Case*, ECF 1 at 17. That statute permits removal of any action against "any officer (or

any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ."

The plaintiffs in the *Baltimore Case* moved to remand the suit to State court. I considered and rejected all of defendants' jurisdictional claims and granted the motion to remand. *See Baltimore I*, 388 F. Supp. 3d 538, 547 (D. Md. 2019). The defendants appealed to the Fourth Circuit. That Court affirmed. *Mayor & City Council of Baltimore v. BP P.L.C.*, 952 F.3d 452 (4th Cir. 2020) ("*Baltimore II*").

Under 28 U.S.C. § 1447(d), an order of a district court remanding a case to state court is ordinarily not reviewable on appeal. But, the statute establishes exceptions, providing that "an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." *Id.* The Fourth Circuit construed this language to permit review of only that portion of this Court's ruling that addressed the defendants' claims regarding the federal officer removal statute, 28 U.S.C. § 1442. *See Baltimore II*, 952 F.3d at 459-61. The *Baltimore II* Court also concluded that § 1442 did not confer jurisdiction, and thus affirmed the remand. *See id.* at 463-71.

Unhappy with that result, defendants in the *Baltimore Case* petitioned the Supreme Court for a writ of certiorari. The Supreme Court granted certiorari, noting a circuit split, to answer whether "28 U. S. C. §1447(d) permit[s] a court of appeals to review any issue in a district court order remanding a case to state court where the defendant premised removal in part on the federal officer removal statute, §1442." *Baltimore III*, at 1. On May 17, 2021, the Supreme Court issued a 7-1 decision that vacated the judgment of the Fourth Circuit and remanded to the Fourth Circuit for further proceedings. *Id.* at 14.

3

The decision explains that § 1447 authorizes appellate review "of the whole of" a district court's remand order when the notice of removal cites § 1442 "as one of its grounds for removal," as occurred in the *Baltimore Case*. *Id.* at 5. Therefore, it concludes that the Fourth Circuit erred in limiting its review to the portion of the ruling that addressed the federal officer removal statute. However, the Supreme Court also declined to consider "the additional grounds" for removal asserted by defendants, reasoning that "the wiser course is to leave these matters for the Fourth Circuit to resolve in the first instance." *Id.* at 14.

Therefore, the Fourth Circuit will, before long, address the issues it did not reach the first time around. It is undisputed that whatever the Fourth Circuit determines as to the remaining jurisdictional claims in the *Baltimore Case* will have direct bearing on defendants' removal arguments here.

## II. Discussion

### A.

A district court has broad discretion to stay proceedings as part of its inherent power to control its own docket. *Landis v. North American*, 299 U.S. 248, 254 (1936). But, that discretion is not without limits. *In re Sacramento Mun. Utility Dist.*, 395 Fed. App'x. 684, 687 (Fed. Cir. 2010). A court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255; *see also United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977) ("The determination by a district judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.").

"When considering a discretionary motion to stay, courts typically examine three factors: (1) the impact on the orderly course of justice, sometimes referred to as judicial economy,

4

measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay; (2) the hardship to the moving party if the case is not stayed; and (3) the potential damage or prejudice to the non-moving party if a stay is granted." *Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018); *see CX Reinsurance Co. Limited v. Johnson*, GJH-18-2355, 2020 WL 406936, at *3 (D. Md. Jan. 24, 2020). Additionally, courts consider the length of the requested stay and whether proceedings in another matter involve similar issues. *See Stone v. Trump*, 402 F. Supp. 3d 153, 160 (D. Md. 2019); *Popoola v. MD-Individual Practice Ass'n*, DKC-2000-2496, 2001 WL 579774, at *2 (D. Md. May 23, 2001).

In order to issue a stay, a court must be satisfied that a "pressing need" exists, and that "the need for a stay outweighs any possible harm to the nonmovant." *Elite Const. Team, Inc. v. Wal-Mart Stores, Inc.*, JKB-14-2358, 2015 WL 925927, at *3 (D. Md. Mar. 2, 2015). Significantly, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus, Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

**B.**

With regard to the first factor, which concerns judicial economy, the two sides engaged in considerable prognosticating about whether the Supreme Court would reach beyond the question presented and weigh in on the merits of all of the defendants' removal claims. *See* ECF 80-1 at 7; ECF 117 at 7; ECF 119 at 5-6. The Court need not choose a side in that particular debate, as the Supreme Court clearly declined to provide guidance on those issues. But, the Fourth Circuit soon will.

No matter, insists the City. It is confident that when the Fourth Circuit addresses the "alternative removal arguments" advanced by the defendants, the result is certain: Defendants will

lose. ECF 117 at 4. According to Annapolis, "nearly a dozen" courts have considered and rejected similar arguments in other cases. *Id.*; *see id.* at 2-3 (collecting cases). As one district court judge has put it, the fossil fuel companies named as defendants in those suits have, on the whole, a "batting average of .000." *City & Cty. of Honolulu v. Sunoco LP*, 20-CV-00163-DKW-RT, 2021 WL 839439, at *2 (D. Haw. Mar. 5, 2021). Moreover, Annapolis underscores that "federal courts have a bedrock obligation to 'police' the limits of their own subject-matter jurisdiction." ECF 117 at 12 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). In the City's view, staying this case, and thus briefing on the motion to remand, would amount to a dereliction by this Court of its duty.

In concrete terms, the City predicts that a stay pending the decision of the Fourth Circuit on remand would last for at least six months. ECF 117 at 11. Further, it predicts that there will "be rounds of briefing that will realistically last a minimum of three months, followed at an indefinite future time by additional oral argument and a further opinion of the Fourth Circuit." *Id.* (citing Fed. R. App. P 28(f) (time for filing briefs)); Fourth Circuit Internal Operating Procedure 41.2 (concerning reopening appeals after remand from the Supreme Court)). Defendants do not seem to expect a decision from the Fourth Circuit any sooner.

In addition, the City tries to make much of the fact that multiple courts have denied motions to stay remand orders pending appeal in other climate change cases. *See* ECF 117 at 15-19. However, the standard for granting a stay pending appeal differs from the standard for a discretionary stay in other circumstances, which is what defendants seek here. The former resembles the familiar analysis for granting a preliminary injunction: A court must consider (1) a movant's likelihood of success on the merits of his appeal; (2) the threat of irreparable harm to the movant in the absence of a stay; (3) injury to the non-moving parties that will result from the grant

of a stay; and (4) the public interest. *See Nken v. Holder*, 556 U.S. 418, 433 (2009). In contrast, the standard applicable here, as discussed, entails consideration of judicial economy and prejudice to both sides. Under that framework, the likelihood of a movant's success on the merits is not relevant.

I am not persuaded by the City's other arguments regarding judicial economy for a simple but important reason. The Fourth Circuit's ruling on remand in the *Baltimore Case* is not a foregone conclusion. At least some of the defendants' alternative jurisdictional arguments in the *Baltimore Case*, like those advanced by defendants here, raise novel questions of law on which the Fourth Circuit has yet to opine. Its answers will shape the outcome of—or, at least, the arguments made in support of and in opposition to—the Remand Motion here. If I were to deny defendants' request for a stay, briefing on the Remand Motion might take two to three months to complete. *See* ECF 43 (Order adopting parties' joint proposed briefing schedule). A decision might not issue for another several months.[2] No one involved in this case—neither the parties nor the Court—wishes to see months of effort rendered obsolete by the Fourth Circuit's decision in the *Baltimore Case*. Such an outcome is easily prevented by a stay.

As noted, the Court must also assess the prejudice to defendants if a stay were denied, and the prejudice to plaintiffs from the grant of a stay. *See Int'l Refugee Assistance Project*, 323 F. Supp. 3d at 731. Defendants contend that a stay will not bring hardship to the City, given that the case is in its infancy. *See* ECF 80-1 at 7-8. Annapolis counters that time is of the essence because, with each passing day, threat of sea-level rise grows more dire. *See* ECF 117 at 10. In their reply, defendants characterize Annapolis as a johnny-come-lately to climate change litigation of this sort,

---

[2] Although the District of Maryland continues to chip away at the backlog of trials that has grown substantially during the COVID-19 pandemic, more work remains. Multiple jury trials are anticipated for the summer and fall of 2021.

7

noting that the City's counsel has been representing municipalities in similar suits, including the *Baltimore Case*, for the last four years. *See* ECF 119 at 7-8. Defendants argue that the City "cannot complain now about a short delay pending . . . [a] decision after waiting years to file a complaint." *Id.* at 9.

More important, in my view, is the fact that the outcome of this lawsuit cannot turn back the clock on the atmospheric and ecological processes that defendants' activities have allegedly helped set in motion. The urgency of the threat of climate change writ large is distinct from plaintiff's interest in a speedy determination of federal jurisdiction in this suit.

The Fourth Circuit will surely provide guidance in the *Baltimore Case* that will aid resolution of the Remand Motion. That is worth the wait. As defendants note, denying the Motion would force them—indeed, it would force both sides—to brief the Remand Motion "while the legal landscape is shifting beneath their feet." *Id.* at 9. Moreover, it would result in a decision by this Court with the proverbial half a deck.

### III. Conclusion

For the reasons set forth above, I shall grant the Motion.

An Order follows.

Date: May 19, 2021                                    _____/s/_____
                                                      Ellen L. Hollander
                                                      United States District Judge